IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

EARL CANNON, et al.,

            Plaintiffs,

     v.

VINELAND HOUSING AUTHORITY,

           Defendant.

HON. JEROME B. SIMANDLE

Civil No. 06-2086 (JBS)

**OPINION**

---

APPEARANCES:

Ralth R. Smith, III, Esq.
MARGOLIS EDELSTEIN
Sentry Office Plaza
216 Haddon Avenue
PO Box 92222
Westmont, NJ 08108
    Attorney for Plaintiffs

Allan E. Richardson, Esq.
915 Haddon Avenue
Collingswood, NJ 08108
    Attorney for Defendant

**SIMANDLE**, District Judge:

Plaintiffs in this action are four present and former employees of the Vineland Housing Authority ("VHA") who worked as maintenance repairmen.  Plaintiffs filed this action, alleging that Defendant failed to pay them certain overtime wages to which they allege they were entitled under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a4.  Presently before the Court is Defendant's motion for summary judgment [Docket Item 19].  The principal legal issue to be determined is whetehr under

the undisputed facts of this case, the employees' on-call waiting time is compensable overtime under the FLSA and the NJWHL.  For the reasons set forth below, the Court will grant Defendant's motion.

**I.   BACKGROUND**

    **A.   Facts**

Defendant VHA is a public entity which rents affordable housing units to low- and moderate-income individuals and families, and which provides maintenance services for these housing units.  (Capelli Dep. at 104; Noble Dep. at 46.)  At all times relevant to this lawsuit, Plaintiffs Earl Cannon, Frank Richer, Kenneth Wright, and Leo Velez were employed by VHA as maintenance repairmen.  (Am. Compl. ¶¶ 4-7.)

Plaintiffs' regular workweeks at VHA required them to work eight hours per day from Monday through Friday, for a total of forty hours each week.  (Def.'s Br. Ex. C.)  In addition to these regular hours, each week, one VHA maintenance repairman was required to be on call after regular working hours and over the weekend.  (Def.'s Br. Ex. B at 10.)  VHA employed a rotating schedule for on call assignments, with each maintenance repairman being assigned to be on call for one week, during which time that repairman would be responsible for all maintenance requests placed between 5:00 p.m. and 8:00 a.m. on weekdays and throughout the weekend.  (Id.)  During the period at issue in this case, VHA

generally employed six maintenance repairmen, which meant that each of the Plaintiffs in this case was responsible for being on call for one out of every six weeks. (Capelli Dep. at 132-33.)

During the times when the Plaintiffs were on call, they were not required to stay at home by the telephone, but were instead required to carry pagers so that they could be reached in the event that a maintenance request was placed. (Def.'s Br. Ex. B at 10.) According to Plaintiffs, they were required to call their supervisor "[i]mmediately" when they were paged, (Wright Dep. at 37), and from the time they spoke to the supervisor about the nature of the maintenance request, they had to "drop whatever [it was that they were doing] . . . and be there [to respond to the request] in 20 minutes." (Velez Dep. at 62.) According to Plaintiffs, a repairman who did not arrive at the apartment where the maintenance request was placed within twenty minutes of having responded to a pager request faced discipline, including possible termination.[1] (Id. at 67.) The number of maintenance requests that a repairman could expect to receive during a given on-call week varied widely – some weeks, a repairman would receive no calls over the course of an entire week, (Cannon Dep.

---

[1] The most serious disciplinary action that was taken against any of the Plaintiffs herein for having failed to respond to a maintenance request within twenty minutes while on call was when Mr. Richer was "written up." (Richer Dep. at 27.) In that instance, Mr. Richer not only failed to respond to the maintenance request within twenty minutes, but failed to respond to the call altogether. (Id.)

at 58), but Plaintiff Richer testified that on one occasion he received as many as seventeen maintenance requests in a single on-call week.  (Richer Dep. at 36.)

Plaintiffs allege that the twenty-minute response window during their on-call weeks imposed substantial limitations on the activities they could undertake while on call, because they needed to be able to drop whatever it was that they were doing and respond to the work site within twenty minutes if a request was placed.  Each Plaintiff testified to a wide range of activities that he was unable to participate in during an on-call week, including going to movies, going out to dinner, going fishing, riding horses, taking on part-time work, and going out of town.  (Wright Dep. at 50; Velez Dep. at 91; Richer Dep. at 58.)  Plaintiffs did testify to activities that they were able to undertake when on call – including doing yard work, visiting relatives in towns close to Vineland, attending church, and "hang[ing] around" with relatives in the backyard, (Cannon Dep. at 45, 51; Richer Dep. at 45; Wright Dep. at 60) – but it is clear from the deposition testimony that Plaintiffs felt that they were more restricted in what they could do during on-call weeks than at other times.

During an on-call week, a maintenance repairman who received a repair request would receive a minimum of two hours of overtime

pay,[2] even if the job took less than two hours to complete.
(Richer Dep. at 38.)  If an on-call employee was required to
perform a job lasting longer than two hours, the employee would
be paid at his overtime rate for the number of hours that the job
took to complete.  (Noble Dep. at 93-94.)  During the times when
Plaintiffs were on call but not responding to a maintenance
request, they were not paid; that is, the only overtime pay that
Plaintiffs received during on-call weeks was for the hours spent
responding to maintenance requests, not during the down time
between such requests.  (Am. Comp. ¶ 15.)

**B.   Procedural History**

Plaintiffs Cannon, Richer, and Wright filed the original
Complaint in this action on May 5, 2006 [Docket Item 1], and on
January 22, 2007, Plaintiffs filed an Amended Complaint [Docket
Item 11] which added Plaintiff Velez to the action.  The
Complaint alleges that Defendant failed to pay Plaintiffs time-
and-a-half for time worked in excess of forty hours per week in
violation of the FLSA (Count I) and the NJWHL (Count II).[3]  All
discovery is complete and Defendant has filed the motion for

---

[2]  The Plaintiffs' overtime rate was one and one-half times
their base rate of pay.  (Def.'s Br. Ex. C.)

[3]  The Amended Complaint also alleged that Defendant
violated FLSA by "misclassifying Plaintiffs as employees who are
exempt from the overtime requirements of the FLSA," (Am. Compl. ¶
33), but Plaintiffs withdrew this aspect of the Complaint in
their opposition brief.  (Pls.' Opp'n Br. at 30 n.2.)

summary judgment [Docket Item 19] presently under consideration, to the merits of which the Court now turns.

II.  **DISCUSSION**

    A.  **Standard of Review**

    Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

    Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the

pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." <u>United States v. Premises Known as 717 South Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).  As the Supreme Court has explained,

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

With regard to the resolution upon summary judgment of FLSA claims like those asserted by Plaintiffs, the Court of Appeals has been clear that "[s]imply because the issue before the court is fact-sensitive does not mean that once historical facts are undisputed, the court cannot reach a conclusion based on those facts." <u>Ingram v. County of Bucks</u>, 144 F.3d 265, 267 (3d Cir. 1998).

> [I]t is true that the issue of <u>how</u> a plaintiff spends his on-call time is one of fact and, therefore, cannot be resolved on summary judgment. <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 714 (1986).  However, once there is no genuine issue of material fact as to how a plaintiff spends his on-call time, the determination of whether a plaintiff's activities exclude him "from the

7

overtime benefits of the FLSA is a question of law,"
which can properly be resolved on summary judgment.  See,
e.g., Renfro v. City of Emporia, 948 F.2d 1529, 1536
(10th Cir. 1991) (relying on undisputed facts to grant
summary judgment); Berry v. County of Sonoma, 30 F.3d
1174, 1180 (9th Cir. 1994) (Whether "limitations on the
employees' personal activities while on-call are such
that on-call waiting time would be considered compensable
overtime under the FLSA is a question of law.").

Id.

   **B.   Analysis**

   In support of their claims,[4] Plaintiffs argue that, because

the entirety of their time during on-call weeks was "spent

predominantly for the employer's benefit [rather than] . . . for

the [employees']," id. at 267-68 (quoting Armour & Co. v.

Wantock, 323 U.S. 126, 133 (1944)), they should have been paid at

their overtime rate for every hour of their on-call weeks, rather

than on an hourly overtime basis solely for time spent responding

to maintenance requests.  Defendant argues that under the law of

this Circuit, Plaintiffs were not so precluded from using their

on-call time for personal pursuits as to render their on-call

---

   [4]  As under the FLSA, employees' on-call time under the
NJWHL may count as working hours for which the employees must be
compensated "[i]f calls are so frequent or the 'on-call'
conditions so restrictive that the employees are not really free
to use the intervening periods effectively for their own
benefit."  N.J.A.C. 12:56-5.6(b).  The parties have argued that
the same standards that govern the viability of a FLSA claim to
recover wages owed for on-call hours apply to a NJWHL claim.  The
Court is aware of no authority to the contrary, and, based on the
nearly identical language of the statutes' implementing
regulations, see id., 29 C.F.R. § 553.221(d), the Court agrees
with the parties that the Ingram test set forth above is
applicable to Plaintiffs' FLSA and NJWHL claims.

time compensable under FLSA and the NJWHL.  For the reasons discussed below, the Court agrees with Defendant, and will grant its motion for summary judgment.

"In general, the FLSA requires that employers pay overtime compensation to employees for hours worked in excess of forty hours per work week."  Berry v. County of Sonoma, 30 F.3d 1174, 1180 (9th Cir. 1994) (citing 29 U.S.C. § 207(a)).  The Court of Appeals for the Third Circuit first addressed the question of whether an employee's on-call waiting time is compensable overtime under the FLSA in Ingram v. County of Bucks, 144 F.3d at 265.  The court recognized that, under Supreme Court precedent and Department of Labor ("DOL") regulations, on-call time may be compensable under the Fair Labor Standards Act under two circumstances: "if the employee is required to remain on premises, or if the employee, although not required to remain on the employer's premises, finds his time on-call away from the employer's premises is so restricted that it interferes with personal pursuits."  Id. at 268; see also Armour, 323 U.S. at 133; 29 C.F.R. § 553.221(c), (d).[5]

_____

[5]  The pertinent DOL regulations, which are "entitled to substantial deference," Ingram, 144 F.3d at 268, provide:

(c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work.  For example, where a police station must be evacuated because of an electrical failure and the employees are expected

The <u>Ingram</u> court articulated a four-factor balancing test for courts in this Circuit to employ in determining whether an employee "finds his time on-call away from the employer's premises . . . so restricted that it interferes with personal pursuits," and is thereby entitled to compensation for time spent on call under the FLSA. <u>Ingram</u>, 144 F.3d at 268. In evaluating whether on-call waiting time is compensable under the FLSA, the Court must evaluate:

> first, whether the employee may carry a beeper or leave home; second, the frequency of calls and the nature of the employer's demands; third, the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and fourth, whether the employee actually engaged in personal activities during on-call time.   If these

> to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable.  The employees in this example cannot use the time for their personal pursuits.

> (d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call.  Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits.   Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of the emergency in the night, such time spent at home is normally not compensable.  On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(c), (d).

10

factors reveal onerous on-call policies and significant
interference with the employee's personal life, [c]ourts
have held that on-call time is compensable.

Id.

As the Court recognized, supra, while the resolution of
factual disputes regarding how a plaintiff spends his on-call
time may present a jury question, "the determination of whether a
plaintiff's activities exclude him from the overtime benefits of
the FLSA is a question of law, which can properly be resolved on
summary judgment."  Id. at 267 (internal quotations and citations
omitted).  As the following discussion demonstrates, even
crediting Plaintiffs' evidence as to the nature of the VHA's on-
call policies and the impact upon Plaintiffs' personal activities
and giving Plaintiffs the benefit of all favorable inferences,
the Court finds that, as a matter of law, Plaintiffs' "time
on-call away from the employer's premises [did not] so . . .
interfere[] with [Plaintiffs'] personal pursuits" as to render
their on-call waiting time compensable under the FLSA and the
NJWHL.  Id. at 268.

     1.   Capacity to Carry a Pager and Leave Home

The first factor under Ingram for determining whether on-
call waiting time is compensable is "whether the employee may
carry a beeper or leave home."  Id.  In discussing this factor,
the Court of Appeals contrasted Cross v. Arkansas Forestry
Commission, 938 F.2d 912 (8th Cir. 1991), in which employees were

11

bound to monitor a hand-held radio with limited range during on-call time, with Martin v. Ohio Turnpike Commission, 968 F.2d 606 (6th Cir. 1992), in which employees could carry a pager or leave word as to where they could be located; Ingram holds that an employee's capacity to carry a pager and leave home weighs in favor of finding his on-call waiting time non-compensable. Ingram, 144 F.3d at 268-69.  As in Ingram, the undisputed fact that Plaintiffs carried pagers and were not bound to remain at home while on call suggests that their on-call time was not compensable under the FLSA and the NJWHL.  (Def.'s Br. Ex. B at 10.)

> 2.   Frequency and Urgency of Calls

Ingram's second factor addresses "the frequency of calls and the nature of the employer's demands."  Ingram, 144 F.3d at 268.  If an on-call employee receives calls with such frequency and of such urgency that the employee "cannot use the time effectively for personal pursuits," 29 C.F.R. § 553.221(d), then that employee's on-call waiting time is more likely to be compensable under the FLSA and the NJWHL than if the calls occur less frequently or with less urgency.

In Ingram, the court used as an example of a case in which an employee's on-call time contained sufficiently frequent disruptions so as to render his on-call time compensable Renfro v. City of Emporia, 948 F.2d 1529, 1537 (10th Cir. 1991), in

which the employees "were called an average of three to five times a day." Ingram, 144 F.3d at 269. By contrast, in Ingram, where the plaintiffs "were not able to demonstrate that the frequency of calls approached three to five calls to duty per day like Renfro," id., the court found that the employees' on-call waiting time was non-compensable.

As in Ingram, Plaintiffs here have not adduced evidence suggesting that the average number of maintenance requests they received during on-call weeks equaled the three- to five-call per day frequency established in Renfro. In this case, Plaintiffs' deposition testimony puts the range of calls received over the course of an on-call week at between zero, (Cannon Dep. at 58), and seventeen, (Richer Dep. at 36), with both poles representing outliers from the norm. Even using the figure of seventeen calls in one week – which Plaintiff Richer testified had happened only once over the course of his twenty-year career, (id.) – such a rate of calls would amount to less than 2.5 calls per day, which is less than even the low end of the range established in Renfro.

Plaintiffs have identified no cases suggesting that employees receiving fewer than an average of three to five calls per day are so unable to use their on-call time for personal pursuits that their on-call time should be compensable under the FLSA and the NJWHL. Instead, Plaintiffs point out that, like the employees in Renfro, Plaintiffs here were required to be at the

13

site of the maintenance request within twenty minutes after
having spoken to their supervisor about the nature of the
request.  (Wright Dep. at 37; Velez Dep. at 62.)  Plaintiffs
argue that the urgency of the calls in this case rendered
Plaintiffs unable to use their on-call time for personal
pursuits.[6]

The Court disagrees with Plaintiffs that the twenty-minute
response window imposed by VHA is alone sufficient to tip the
second Ingram prong strongly in Plaintiffs' favor.  Indeed,
Ingram itself cited with approval cases in which the courts "held
that [employees] should not be compensated for on-call time under
the FLSA" in which the employers imposed a twenty-minute response
time, but in which the employees were paged less frequently than
the three to five average daily call frequency established in
Renfro.  See Ingram, 144 F.3d at 269 (citing Armitage v. City of
Emporia, 982 F.2d 430, 432 (10th Cir. 1992) and Bright v. Houston
Northwest Medical Center, 934 F.2d 671 (5th Cir. 1991) (en
banc)); see also Norton v. Worthen Van Service, Inc., 839 F.2d
653, 654-56 (10th Cir. 1988) (fifteen- to twenty-minute response

---

[6]  Defendant's evidence suggests that, contrary to
Plaintiffs' testimony, VHA's policy only required to call their
maintenance supervisor within thirty minutes of having received a
page.  (Noble Dep. at 52-53; Capelli Dep. at 34-35.)  For
purposes of Defendant's summary judgment motion, the Court
credits Plaintiffs' evidence and assumes that the VHA's policy
required Plaintiffs to arrive at the job site within twenty
minutes of having spoken with the maintenance supervisor.  See
Hunt, 526 U.S. at 552.

time itself insufficient to make on-call waiting time compensable).

In light of the fact that the average number of weekly calls Plaintiffs fielded while on call was considerably less than the call frequency at issue in Renfro, approaching a three-per-day average for only one week in twenty years, and the indication in Ingram that a twenty-minute response window does not itself require that on-call time be compensable, the Court agrees with Defendant that under Ingram, the VHA's on-call policy was not so restrictive with regard to "the frequency of calls and the nature of the employer's demands," Ingram, 144 F.3d at 268, as to require that Plaintiffs be compensated for their on-call waiting time.  While this factor presents the closest call of the four Ingram considerations, the Court's analysis must account for "all the circumstances of the case," id. (quoting Armour, 323 U.S. at 133) (emphasis added), and, as the Court's discussion makes clear, the remaining factors weigh decisively in favor of finding Plaintiffs' on-call waiting time non-compensable.  Ingram itself makes clear that the twenty-minute response window in this case, standing alone, does not suffice to render Plaintiffs' on-call waiting time compensable under the FLSA and the NJWHL.

### 3.   Capacity to Switch On-Call Shifts

Under Ingram's third factor, the Court addresses "the employee's ability to maintain a flexible on-call schedule and

15

switch on-call shifts." Id.  In Ingram, the court noted that
"the undisputed facts show that the deputies could trade shifts
to pursue personal activities without interference," and once
again drew a comparison with Renfro, in which "shift trades were
difficult, if not impossible, to arrange."  Id. at 269 (citing
Renfro, 948 F.2d at 1537); see also Norton, 839 F.2d at 654-56.

The evidence in the record makes clear that Plaintiffs could
switch on-call shifts with other maintenance repairmen with
little difficulty.  Charles Capelli, the shift supervisor at VHA
from 1994 to 2005, testified that throughout his eleven-year
tenure as shift supervisor, he never denied a repairman's request
to switch on-call times.  (Capelli Dep. at 62.)  Plaintiff Cannon
testified that there was "never a time when [he] needed to swap
out and [he] couldn't," (Cannon Dep. at 62), and each of the
Plaintiffs admitted in his deposition that the repairmen were
able to switch on-call shifts with no opposition from VHA.[7]
(Richer Dep. at 42-44; Wright Dep. at 67-68; Velez Dep. at 82.)
As was the case in Ingram, then, the Court finds that Plaintiffs
"could trade shifts to pursue personal activities without
interference" from VHA, which further indicates that Plaintiffs'

_____

[7]  While Plaintiff Wright testified that "it could be a
really nice weekend and nobody wants to give up their weekend, so
you're stuck with [the shift]," (Wright Dep. at 68), this
testimony falls short of suggesting that "shift trades were
difficult, if not impossible, to arrange," Ingram, 144 F.3d at
269, particularly in light of the testimony from each Plaintiff
concerning the ability of repairmen to swap shifts.

16

on-call waiting time is not compensable under the FLSA and the NJWHL. <u>Ingram</u>, 144 F.3d at 269.

      4.   <u>Capacity to Engage in Personal Activities</u>

The final <u>Ingram</u> factor requires an assessment of "whether the employee actually engaged in personal activities during on-call time." <u>Id.</u> at 268. Significantly, it is well-settled that the test under this prong is not whether the employee has "substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." <u>Bright v. Houston Northwest Medical Center Survivor, Inc.</u>, 934 F.2d 671, 677 (5th Cir. 1991); <u>see also</u> <u>Ingram</u>, 144 F.3d at 269 ("We recognize that these activities may not represent the full range of activities in which the [plaintiffs] would like to engage"); <u>Berry</u>, 30 F.3d at 1185 (recognizing that the test "is not whether the [plaintiffs] are prevented from participating in certain personal activities, but whether they actually engage in personal activities during on-call shifts"). In other words, the test is not whether the employee can engage in an unrestricted range of personal pursuits while on call, but is instead whether the employee is able to participate in personal activities during on-call waiting time.

Under this standard, it is clear that this final prong of

17

the Ingram test indicates that "the conditions placed on the employee[s'] activities [were not] so restrictive that the employee[s] [could not] use the time effectively for personal pursuits," 29 C.F.R. § 553.221(d), making the on-call time at issue in this case non-compensable under the FLSA and the NJWHL. Plaintiffs' testimony unquestionably demonstrates that when they were on call, they could not engage in a host of activities, ranging from going fishing to riding horses to going out of town for the weekend. (Wright Dep. at 50; Velez Dep. at 91; Richer Dep. at 58.) The record also demonstrates, however, that Plaintiffs were able to do yard work, visit relatives in neighboring towns, attend church, and spend time with relatives in the backyard. (Cannon Dep. at 45, 51; Richer Dep. at 45; Wright Dep. at 60.) While the Court "recognize[s] that these activities may not represent the full range of activities in which the [plaintiffs] would like to engage," Ingram, 144 F.3d at 269, such unrestricted freedom is not the standard against which on-call time is measured in determining whether such time is compensable under the FLSA and the NJWHL. Under the test that is applicable under Ingram's fourth prong – "whether [the employees] actually engage in personal activities during on-call shifts," Berry, 30 F.3d at 1185 – the Court finds that this factor likewise indicates that Plaintiffs' on-call waiting time was non-compensable under FLSA and the NJWHL.

Taking into account "all the circumstances of the case," Armour, 323 U.S. at 133, and the four considerations outlined in Ingram, the Court finds that as a matter of law, "the conditions placed on the employee[s'] activities [were not] so restrictive that the employee[s] [could not] use the time effectively for personal pursuits." 29 C.F.R. § 553.221(d). Under the circumstances presented, giving Plaintiffs the benefit of all reasonable factual inferences, the Court holds that Plaintiffs' on-call time is not compensable under the FLSA or the NJWHL. Defendant's motion will accordingly be granted.

## III. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's motion for summary judgment. The accompanying Order will be entered.


**September 19, 2008**              **  s/ Jerome B. Simandle  **
Date                                JEROME B. SIMANDLE
                                    United States District Judge